IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BOBBY AKLES HILL, | ) | |
| AIS #241257, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:05-CV-333-WKW |
| | ) | [WO] |
| | ) | |
| JIMMY ABBOTT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Bobby Akles Hill ["Hill"], asserts that the defendants violated his constitutional rights by failing to provide him adequate medical and mental health treatment during his confinement in the Tallapoosa County Jail. Hill names Jimmy Abbott, the sheriff of Tallapoosa County, Alabama; Blake Jennings, the administrator of the Tallapoosa County Jail; and Carolyn Moss, assistant administrator of the jail, as defendants in this cause of action. Hill seeks monetary damages for the alleged violations of his constitutional rights.

The defendants filed a special report and supporting evidentiary materials addressing Hill's claims for relief. Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. *Order of June 29, 2005 - Court Doc. No. 13*. Thus, this case is now pending on the defendants' motion for summary

judgment.  Upon consideration of the motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I.  FACTS[1]

On August 19, 2002, law enforcement officials arrested Hill on a charge of capital murder and transported Hill to the emergency room at the Lake Martin Community Hospital for treatment of an injury to his nose suffered prior to his arrest.  At this time, the emergency room physician performed an "ENT evaluation" and noted Hill had suffered a "fracture [of the] nasal septum...."  *Defendants' Exhibit N - Tallapoosa County Jail Medical Clearance Report of Bobby Akles Hill -- Court Doc. No. 11-4* at 2.  The emergency room physician prescribed Motrin (ibuprofen) and released Hill for confinement in the Tallapoosa County Jail.[2]  *Id*.  He did not recommend surgery and conditioned Hill's discharge only upon the provision that Hill receive ibuprofen for his injury.  *Id*.  The following day a nurse employed by the jail, Angela Webb, and the jail physician evaluated Hill's condition.  Nurse Webb noted a bone graft to Hill's lower left leg and a surgically repaired injury to Hill's right leg. *Defendants' Exhibit O - Tallapoosa County Jail Medical Progress Notes of Bobby Akles Hill -- Court Doc. No. 11-4* at 4.  Upon evaluation of Hill's

---

[1]The medications prescribed to Hill are hereinafter listed by their brand name followed by their generic name.  If no brand name is identified, the medication is identified only by its generic name.  A generic drug is chemically equivalent to and has the same therapeutic effect as its brand name counterpart.

[2]Motrin (ibuprofen) is used for treatment of pain, inflammation and fever.

nasal septum, nurse Webb observed moderate "edema [with] little bruising [to] nose @ this time." *Id*. The attending physician likewise examined Hill and observed him "breathing [normally]" with no "bleeding ... nasal bridge swollen [no] septal hematoma or deviation.... Cancel ENT consult." *Id*. "Inmate placed in C-10 for medical observation & ice pack given." *Id*. On August 21, 2002, health care personnel released Hill from the medical observation cell and allowed his placement in the jail's general population. *Id*.

On September 4, 2002, nurse Webb evaluated Hill and obtained his medical history. She again noted a "bone graft [to Hill's] left leg" for an injury suffered when he jumped off a horse and the "ORIF [open reduction and internal fixation] right ankle (run over by car). No other significant inj[ury]/ Back problems noted except S/P [status post] Fx [fractured] back @ age 16 (hit by tree)..... Back spasm & left knew pain ... will start muscle relaxant...." *Id*. On September 5, 2002, the jail physician examined Hill and prescribed Nasacort AQ (triamcinolone acetonide).[3] *Id*. at 5. On this day, Hill also requested that nurse Webb place him on the dental list for gum decay surrounding an upper left tooth. *Id*. Nurse Webb granted this request.

On October 7, 2002, the jail physician examined Hill with respect to complaints of

---

[3]Nasacort AQ (triamcinolone acetonide) is a nasal inhaler used for relieving inflammation.

pain in his left upper tooth and prescribed Naprosyn (naproxen),[4] Amoxil (amoxicillin),[5] and Atarax (hydroxyzine).[6] Hill again reported to the health care unit on October 24, 2002 complaining of tooth pain. Nurse Webb advised Hill he had a dental appointment scheduled for the next week and noted Hill had already been placed on pain medications and an antibiotic. She discontinued his Nasacort but prescribed another nasal spray and Pen VK (penicillin V potassium).[7]

On October 31, 2002, jail officials transported Hill to his dental appointment. Hill underwent a tooth extraction and thereafter returned to the Tallapoosa County Jail. Nurse Webb evaluated Hill upon his return to the jail at 2:20 p.m. and noted "Gauze packing in place [with] no bleeding noted @ this time. Reviewed care of mouth [per] extraction instructions [with] inmate & copy of instructions & gauze [packet] given to inmate. Ice pack given to apply to jaw [as needed]. Kitchen notified to send soup/jello for supper & soft diet for breakfast." *Id*. at 6. At 4 p.m., Nurse Webb dispensed 600 milligrams of ibuprofen to Hill "for [his] complaint of pain. *Id*. The following day, nurse Webb examined Hill, at which time she noted "no problems ... from tooth ext[raction]" and provided Hill warm "salty [water] ... to gargle with." *Id*.

---

[4]Naprosyn (naproxen) is used for the treatment of pain, inflammation and fever.

[5]Amoxil (amoxicillin) is an antibiotic in the class of antibiotics called penicillins and is used to treat infections. It is also effective in preventing the spread of many different bacteria.

[6]Atarax (hydroxyine) is an antihistamine used for relief of various allergic reactions.

[7]Pen VK (penicillin V potassium) is an antibiotic used to treat a variety of bacterial infections.

On November 6, 2002, nurse Webb provided Hill a Nasacort inhaler.  *Defendants'*
*Exhibit P - Medications/Physician Orders -- Court Doc. No. 11-4 at 15.*  The plaintiff next
returned to the health care unit on December 18, 2002 complaining of pain in his right
ankle and left knee.  *Defendants' Exhibit O - Tallapoosa County Jail Medical Progress*
*Notes of Bobby Akles Hill -- Court Doc. No. 11-4 at 6.*  The jail physician examined Hill
and, due to Hill's intolerance to non-steroidal anti-inflammatory drugs, prescribed Tylenol
(acetaminophen).[8]  *Id.*  On January 6, 2003, the jail physician examined Hill for an ingrown
toenail on his left foot and acne on his back.  The doctor prescribed tetracycline for
treatment of these complaints.[9]  *Id.*  Hill underwent a test of his blood sugar on January 25,
2003 with normal results and, on February 5, 2003, received an Ace bandage to wrap his
knee as needed.  *Id.* at 7.  Pursuant to a request submitted by Hill, nurse Webb conducted
a consult with Hill on March 18, 2003.  *Defendants' Exhibit T - Inmate Request Form of*
*March 18, 2003 -- Court Doc. No. 11-4 at 25.*

On April 14, 2003, Hill sought treatment for an ingrown toenail on his right big toe.
*Defendants' Exhibit O - Tallapoosa County Jail Medical Progress Notes of Bobby Akles*
*Hill -- Court Doc. No. 11-4 at 7.*  Upon examination of Hill, nurse Webb observed
"redness/swelling outer aspect Right great toenail [with] no drainage present.  Inmate given
basin [for] hot [water with] Epsom salt to soak foot in; also given stick to use to push

---

[8]Tylenol (acetaminophen) is used for fever reduction and pain relief.

[9]Tetracycline is a broad-spectrum antibiotic used in the treatment of a variety of infections and acne.

cuticle back.  Inmate instructed to soak foot daily in AM & reminded again when cutting toenail to cut straight across.  Inmate verbally acknowledged instructions given." *Id*.  On April 17, 2003, Hill returned to the medical unit complaining of his right ingrown toe.  Nurse Webb examined Hill's toe and noted "no [signs] of infection ..., redness slightly improved, toe cleaned.  Inmate instructed to continue soaking toe as directed." *Id*.

On April 24, 2003, nurse Webb evaluated Hill "per request for complaint [of] sinus problems/cold." *Id*.  At this time, Hill had a temperature of 99.2 degrees.  "Ears ok, throat slightly red, chest clear, has hacking cough.... Will start antibiotic & decongestant.  Inmate instructed to drink plenty of [fluids] & to rest when possible." *Id*.  On May 8, 2003, the jail physician examined Hill for complaints related to ingrown toenails and acne.  The physician prescribed doxycycline.[10]

On May 14, 2003, during a shakedown of Hill's cell, correctional officers found medication prescribed for Hill in the possession of his cellmate.  Based on this information, medical personnel discontinued all of Hill's medications with the exception of the doxycycline.  *Id*. at 8.  On May 21, 2003, the jail physician examined Hill with respect to complaints of ingrown toenails and chronic pain in his left knee.  The doctor noted "no recent injury" to Hill's knee, "vitals stable" and "ingrown toenails better ... no surgery needed." *Id*.

_____

[10]Doxycycline is prescribed to combat different types of infections and is also utilized in the treatment of acne.

Hill complained of diarrhea on June 12, 2003, and nurse Webb prescribed anti-diarrhea medication.  *Id*.  The following day, Hill advised medical personnel that the diarrhea had subsided.  On June 26, 2003, Hill reported to the medical unit complaining of back pain.  Nurse Webb performed a urinalysis and assessed Hill's back.  *Id.* at 9.  She observed "no swelling/bruising, etc....  Inmate states he did 1 hand push-ups lately & this affect[ed] back.  Inmate instructed to apply [warm] compresses to area [as needed] & given sports creme to apply to area.  Inmate has not been going out & exercis[ing] in quite a while.  Inmate encouraged to go outside & walk as much as possible when allowed."  *Id*.

On August 12, 2003, Hill advised health care personnel he was "worried/stressed about situation."  *Id*.  Nurse Webb counseled Hill and "allowed [him] to vent frustration."  *Id*.  On August 27, 2003, Hill again complained of ingrown toenails.  Nurse Webb examined Hill for this complaint.  "No drainage/infection noted.  Inmate given basin & Epsom salt to use to soak feet also given wooden stick to push cuticles back...."  *Id*.  On September 2, 2003, Hill reported to the health care unit complaining of pain in his right wrist caused by his slamming a door on the wrist the previous night.  *Id*.  Nurse Webb evaluated Hill's right wrist with "no bruising noted, puffiness noted....  Ice pack given, wrapped [wrist with] Ace bandage & will start Ibuprofen x 3 days."  *Id*.  On September 25, 2003, Hill advised the medical staff he "struck right 2nd toe on iron door."  *Id* .  Nurse Webb examined Hill and observed a moderate amount of bruising to this toe.  *Id*.  She prescribed ibuprofen and provided Hill with an ice pack.  *Id*.

On October 23, 2003, nurse Webb examined Hill "for head cold symptoms...." *Id.* at 10. His temperature registered "98.4, ears ok, throat slightly red, nasal stuffiness present, chest clear. Will start decongestant x 1 [week]. Inmate instructed to take hot shower early AM." *Id.* A few weeks later, Hill again reported to the health care unit complaining of a sore throat, earache and fever. *Id.* Nurse Webb evaluated Hill's condition as follows: "T = 97.6, ears checked [with] no problems noted, nasal stuffiness noted, throat very red/irritated & chest clear." *Id.* Based on her assessment of Hill's condition, nurse Webb prescribed Keflex (cephalexin) and a decongestant.[11] *Defendants' Exhibit P - Medications/Physician Orders -- Court Doc. No. 11-4 at 16.*

Hill's next request for medical treatment occurred on June 21, 2004, when he reported to the health care unit seeking treatment for an ingrown toenail on his right foot. *Defendants' Exhibit O - Tallapoosa County Jail Medical Progress Notes of Bobby Akles Hill -- Court Doc. No. 11-4 at 10.* Nurse Webb examined Hill and "instructed [him] to continue soaking [as needed] and use stick to push cuticle back. Will start antibiotic x 1 [week] & monitor." *Id.* On July 29, 2004, the jail physician examined Hill for the ingrown toenail on his left foot. The doctor noted no redness and advised Hill to allow the toenail to "grow out." *Id.*

On September 18, 2004, Hill advised nurse Webb he had ingested "6-7 Tylenol purchased from [the jail] commissary.... Inmate moved to C-10 & placed under suicide

---

[11]Keflex (cephalexin) is an antibiotic used to treat bacterial infections.

precaution." *Id*.  Health care personnel monitored Hill for three days.  On the second day, nurse Webb noted Hill "has exhibited no other inappropriate behavior/actions since moved to C-10 " but ordered that he "remain in C-10 @ this time." *Id*.  On September 21, 2004, nurse Webb ordered Hill "returned to general population." *Id*.

On October 12, 2004, nurse Webb examined Hill with respect to his complaint of "cold symptoms....  T = 98.6, ears = ok, throat slight[ly] red, pain above eyes, chest clear. Will start decongestant.  Inmate also complaining [with] productive cough (yellowish-colored sputum).  Will place cough syrup on med[ical] cart [for Hill] to use @ bedtime x 1 [week]." *Id*. at 11.  Hill returned to the health care unit on October 15, 2005 advising he believed "cold 'settling' in chest." *Id*.  Nurse Webb examined Hill and noted a temperature of "98.4, chest clear.  Continue same meds." *Id*.

On October 29, 2004, Nurse Webb again evaluated Hill with respect to a complaint associated with the ingrown toenail on his right great toe.  She cleaned the toe with "no infection noted.  Inmate given basin & wooden stick to use to lift cuticle back." *Id*.  On November 9, 2004, Hill reported to the health care unit with complaints regarding the ingrown toenail on his left great toe.  Nurse Webb examined and cleaned Hill's toe then applied a triple antibiotic ointment to the toe.  *Id*.  On November 22, 2004, Nurse Webb removed a portion of Hill's ingrown toenail, cleaned the affected area and applied a triple antibiotic ointment.  *Id*.

On January 13, 2005, the jail physician examined Hill regarding complaints of pain

in his legs, knees and ankles.  *Id*.  The physician prescribed Tylenol-Arthritis and referred Hill for a mental health consultation.  Nurse Webb notified mental health of the physician's order for counseling and a mental health nurse evaluated Hill on January 26, 2005.  *Id*. at 12.  Jail officials allowed mental health personnel unfettered access to Hill and these individuals performed subsequent mental health evaluations as they deemed necessary.

On February 4, 2005, medical personnel evaluated Hill for a complaint of indigestion.  At this time Cathy Dubose, a registered nurse employed by the Tallapoosa County Jail, examined Hill and prescribed an antacid.  *Id*.  On February 18, 2005, nurse Dubose consulted Hill and prescribed Benadryl (diphenhydramine).[12]  *Defendants' Exhibit P - Medications/Physician Orders -- Court Doc. No. 11-4 at 16*.   On February 25, 2005, the jail physician examined Hill with respect to chronic leg pain.  *Defendants' Exhibit O - Tallapoosa County Jail Medical Progress Notes of Bobby Akles Hill -- Court Doc. No. 11-4 at 12*.   At this time, the physician prescribed Ultram (tramadol)[13] and Elavil (amitriptyline).[14]  *Id*.  On March 21, 2005, nurse Dubose increased the dosage of Elavil (amitriptyline) prescribed for Hill and on April 1, 2005 renewed his prescription for Benadryl (diphenhydramine).  *Defendants' Exhibit P - Medications/Physician Orders -- Court Doc. No. 11-4 at 16-17*.

---

[12]Benadryl (diphenhydramine) provides relief of allergic reactions and eases anxiety.

[13]Ultram (tramadol) is used for pain relief.

[14]Elavil (amitriptyline) is an antidepressant medication.  It is useful in the treatment of depressed patients with insomnia, restlessness and nervousness.

10

On May 4, 2005, the jail physician examined Hill with respect to complaints of numbness in his left foot and back pain. *Defendants' Exhibit O - Tallapoosa County Jail Medical Progress Notes of Bobby Akles Hill -- Court Doc. No. 11-4 at 12.* The doctor assessed Hill's condition and prescribed Neurontin (gabapentin),[15] Prilosec (omeprazole)[16] and Naprosyn (naproxen). *Id.*; *see also Defendants' Exhibit P - Medications/Physician Orders -- Court Doc. No. 11-4 at 17.*

Hill asserts that the defendants failed to provide him with adequate medical treatment and mental health care during his confinement in the Tallapoosa County Jail. The defendants deny they acted with deliberate indifference to Hill's medical and mental health conditions and, instead, maintain they provided Hill with all necessary treatment for his conditions. The undisputed medical records demonstrate that medical personnel evaluated and rendered treatment to Hill each time he reported to the health care unit. These records also reflect that mental health professionals evaluated Hill and provided care to him as they deemed necessary. The specific treatment prescribed depended upon the observations and evaluations of Hill's conditions by the attending health care and/or mental health professional. Additionally, the medical records establish that medical personnel prescribed numerous medications in an effort to treat each condition about which Hill complained. The medications prescribed included pain relievers, decongestants,

---

[15]Neurontin (gabapentin) is an anticonvulsant.

[16]Prilosec (omeprazole) is an antacid used to block the production of acid by the stomach.

antibiotics, antacids and an antidepressant.  It is likewise clear from the medical records that health care personnel consistently monitored Hill's various conditions and prescribed medications and treatment for his complaints.

## II.  STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, Hill is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  A plaintiff's conclusory allegations of a constitutional violation similarly do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984).  Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element

essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his

favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  In this case, Hill has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## III. DISCUSSION[17]

To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical or mental health treatment, an inmate must, at a minimum, show that those responsible for providing such treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, jail personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*,

---

[17]The pleadings establish that the actions which form the basis of the instant complaint occurred during Hill's incarceration in the Tallapoosa County Jail as a pretrial detainee.  The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520 (1979).  However, for analytical purposes there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).  "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the jail's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))."  *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference).  Those responsible for providing medical care to inmates may be held liable under the Eighth Amendment only for acting with deliberate

indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The undisputed evidentiary materials submitted by the defendants demonstrate that jail medical personnel routinely examined Hill, thoroughly evaluated his complaints and responded to his numerous requests for treatment. *See Defendants' Exhibit O - Tallapoosa County Jail Medical Progress Notes of Bobby Akles Hill -- Court Doc. No. 11-4*. These materials likewise establish that medical personnel prescribed several medications during their treatment of Hill's myriad of complaints. *Id.* Moreover, the medical records establish that mental health professionals evaluated and consulted Hill as they deemed appropriate. It is therefore clear that the course of treatment undertaken by the jail's medical staff and mental health professionals brought to the jail was neither grossly incompetent nor inadequate. Although Hill asserts that he should have received surgery on his nose and X-rays on his legs and back, *Plaintiff's July 21, 2005 Response in Opposition to the Defendants' Special Report - Court Doc. No. 18* at 1-2, the mere fact that he desired a different mode of medical treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505.

Hill presents no probative evidence demonstrating that the defendants in any way disregarded a substantial risk to his medical and mental health needs, serious or otherwise. In light of the foregoing, the court concludes that Hill has utterly and completely failed to

establish that the defendants acted with deliberate indifference.  Summary judgment is therefore due to be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for summary judgment filed by the defendants be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before July 24, 2007 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d

33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981,

*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

      DONE, this 10th day of July, 2007.


      /s/ Susan Russ Walker
      SUSAN RUSS WALKER
      UNITED STATES MAGISTRATE JUDGE